UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
:
AVROHOM MARMULSZTEYN,                     :
:
                             Plaintiff,   :       **MEMORANDUM & ORDER**
:       08-CV-4094 (DLI) (LB)
      -against-                                       :
:
JANET NAPOLITANO,                         :
Secretary of Homeland Security,           :
:
                            Defendant.   :
:
------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

      Avrohom Marmulszteyn ("Plaintiff") commenced this action against Janet Napolitano ("Defendant"), Secretary of the United States Department of Homeland Security ("DHS"), alleging employment discrimination on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Plaintiff principally claims that his employer, U.S. Customs and Border Protection ("CBP"), an agency within DHS, failed to provide him with a reasonable religious accommodation while serving as a Customs and Border Protection Officer ("CBPO"). Additionally, the Court construes the Verified Amended Complaint ("Complaint") as asserting a claim of disparate treatment on the basis of religion. (*See generally* Complaint ("Compl."), Doc. Entry No. 31.) Defendant moved to dismiss the Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). (Defendant's Motion to Dismiss or for Summary Judgment ("Def. Mot."), Doc. Entry No. 47.) For the reasons set forth below,

Defendant's motion to dismiss is denied and Defendant's motion for summary judgment is granted.

## BACKGROUND

**I.      Overview of CBP Employment Practices**

CBP, an agency within DHS, is tasked with protecting the United States at its various ports of entry.  (Defendant's 56.1 Statement ("Def. 56.1"), Doc. Entry No. 49, at ¶¶ 11-12; Plaintiff's 56.1 Statement ("Pl. 56.1"), Doc. Entry No. 54, at ¶ 11-12.)  CBP detects and prevents terrorists and instruments of terror, as well as harmful pests, illegal drugs, and illegal aliens, from entering the country, while also facilitating the safe and orderly flow of legitimate trade and lawful travelers.  (Def. 56.1 at ¶¶ 12-13; Pl. 56.1 at ¶¶ 12-13.)

CBP operates a duty station at the port of entry located at John F. Kennedy International Airport in Jamaica, New York ("Port of JFK").  (Def. 56.1 at ¶ 15; Pl. 56.1 at ¶ 15.)  Newly hired CBPOs at the Port of JFK are customarily assigned to the Passenger Processing Unit.  (Def. 56.1 at ¶ 27; Pl. 56.1 at ¶ 27; Plaintiff's Affidavit in Opposition to Defendant's Motion ("Pl. Aff."), Doc. Entry No. 55, at ¶ 6.)  CBPOs are required to work a schedule consisting of five days on followed by two consecutive days off, called "rotating days off," because they rotate each week according to a fixed schedule.[1]  (Def. 56.1 at ¶¶ 14, 28-29; Pl. 56.1 ¶¶ 14, 28-29; Transcript of Plaintiff's Deposition dated Oct. 26, 2010 ("Pl. Dep. Tr."), Doc. Entry No. 50, Ex. S, at 76:10-21.)   As a result of this schedule, CBPOs must ordinarily work five out of every seven Saturdays.  (Def. 56.1 at ¶ 30; Pl. 56.1 at ¶ 30.)

Certain CBPOs of the Islamic and Orthodox Jewish faiths have permanent exemptions for religious reasons from working on a particular day of the week, such as Friday or Saturday.

---

[1]      Plaintiff claims that the rotating days off are fixed and do not change,  (Pl. 56.1 at ¶ 28), but does not dispute a schedule that characterizes these days as changing each week in a standard seven-week work cycle.  (*Id.* at ¶ 29.)

(Def. 56.1 at ¶¶ 57-59; Pl. 56.1 at ¶¶ 57-59.) CBP honors such exemptions for these particular employees because they had previously worked for one of CBP's predecessor agencies, which had granted the exemptions. (Def. 56.1 at ¶¶ 57, 59-60, 170; Pl. 56.1 at ¶¶ 57, 59.) These employees are known as Legacy Employees, and are the only employees who have such exemptions.[2] (Pl. 56.1 at ¶¶ 56-57, 59, 61; Def. 56.1 at ¶¶ 56-57, 59.)

## II.     Plaintiff's Religious Discrimination Claim

Plaintiff is an Orthodox Jew. (Def. 56.1 at ¶ 2; Pl. 56.1 at ¶ 2.) His religion requires him to abstain from work on the Sabbath, which is a twenty-five hour period running from sunset on Friday until one hour after sunset on Saturday. (Def. 56.1 at ¶ 3; Pl. 56.1 at ¶ 3.) After this period has elapsed, Plaintiff's religion permits him to work for the remainder of Saturday evening. (Def. 56.1 at ¶ 4; Pl. 56.1 at ¶ 4.)

In June 2006, Plaintiff was hired by CBP as a CBPO at the Port of JFK. (Def. 56.1 at ¶ 1; Pl. 56.1 at ¶ 1.) Following a training period, Plaintiff was assigned to the Passenger Processing Unit, in accordance with CBP's customary employment assignment practices. (Def. 56.1 at ¶¶ 27, 107; Pl. 56.1 at ¶¶ 27, 107.) There, Plaintiff was subject to the general requirement that CBPOs work the standard rotational schedule, which entailed that Plaintiff work most Saturdays. (Def. 56.1 at ¶¶ 29-30, 107; Pl. 56.1 at ¶¶ 29-30, 107.)

Given the conflict between this work schedule and Plaintiff's religious duty to abstain from work on the Sabbath, Plaintiff filed a Religious Accommodation Request with the CBP Equal Employment Opportunity ("EEO") Office, seeking a religious accommodation exempting him from work during the Sabbath. (Def. 56.1 at ¶¶ 113-115; Pl. 56.1 at ¶¶ 113-115.) Specifically at issue was Plaintiff's shift from 6:00 a.m. to 2:00 p.m. on most Saturdays

---

[2]     Plaintiff disputes that the Legacy Employees are the only employees that have a permanent religious exemption from work, (*Id.* at ¶ 170), but in support of this allegation offers only a vague assertion that he "believes that there may be others." (*Id.*)

("Saturday Morning Shift").  (Def. 56.1 at ¶ 117; Pl. 56.1 at ¶ 117.)  On August 10, 2006, CBP denied Plaintiff's request for an exemption, citing to CBP's unique operational needs and Plaintiff's agreement, as a condition of employment, to be available for work on Saturday.  (Def. 56.1 at ¶¶ 120-21; Pl. 56.1 at ¶¶ 120-21.)  However, CBP informed Plaintiff that he would be permitted to swap any assigned Saturday Morning Shift with an equally qualified CBPO, subject to a supervisor's approval that could "not be unreasonably withheld."  (Def. 56.1 at ¶ 122; Pl. 56.1 at ¶ 122.)

On November 28, 2006, Plaintiff filed an administrative complaint ("EEO Complaint") with the CBP EEO office, alleging that CBP had engaged in religious discrimination by refusing to grant his request for a permanent exemption from work on the Sabbath.  (Def. 56.1 at ¶¶ 182-84; Pl. 56.1 at ¶¶ 182-84.)  Following the filing of the EEO Complaint, on June 27, 2007, CBP offered Plaintiff another accommodation:  a schedule ("Accommodation Tour") that assigned Plaintiff to the morning shift on Fridays, while also moving any of Plaintiff's assigned Saturday Morning Shifts to 10 p.m. on Saturday night until 6:00 a.m. Sunday morning ("Weekend Overnight Shift").  (Def. 56.1 at ¶¶ 129-30; Pl. 56.1 at ¶¶ 129-30.)  This schedule would ensure that Plaintiff was not scheduled to work at any point during the Sabbath, and had at least eight hours off between shifts.  (Def. 56.1 at ¶¶ 76, 131; Pl. 56.1 at ¶¶ 76, 131.)  Plaintiff nevertheless rejected the proposed Accommodation Tour.  (Def. 56.1 at ¶ 132; Pl. 56.1 at ¶ 132.)

In a decision dated August 11, 2008, an administrative law judge reviewing Plaintiff's EEO Complaint found in favor of CBP, concluding that CBP had not subjected Plaintiff to religious discrimination because it had offered him at least one reasonable religious accommodation.  (Def. 56.1 at ¶ 200; Pl. 56.1 at ¶ 200.)  On September 19, 2008, DHS, as CBP's parent agency, issued a Final Agency Decision adopting this decision.  (Compl. at ¶ 8.)

4

Thereafter, on December 23, 2008, Plaintiff commenced the instant action against Defendant for religious discrimination under Title VII, based on CBP's failure to provide reasonable accommodation for his religious duty to observe the Sabbath. (Compl. at ¶¶ 23, 28). The Complaint, as amended, also asserts that other CBPOs were afforded such reasonable religious accommodations, an allegation this Court construes as asserting a claim that Plaintiff was subjected to disparate treatment on the basis of his religion. (Compl. at ¶ 23.) Defendant moved to dismiss the Complaint for failure to state a claim or, in the alternative, for summary judgment. (Defendant's Memorandum of Law in Support of its Motion ("Def. Mem."), Doc. Entry No. 48, at 1.)

## DISCUSSION

### I. Exhaustion

#### A. Legal Standard

Exhaustion is an "an essential element" of a Title VII claim. *Williams v. N.Y. City Hous. Auth.*, 458 F. 3d 67, 70 (2nd Cir. 2006) (quoting *Legnani v. Alitalia Linee Aeree Italiane S.P.A.*, 274 F. 3d 683, 686 (2d Cir. 2001)). Therefore, before bringing a Title VII action in federal court, an individual must present the claims forming the basis of such an action in a complaint to the EEOC or the equivalent state agency. 42 U.S.C. § 2000e-5 (2006); *Williams*, 458 F. 3d at 69. Nevertheless, claims not raised in an EEOC complaint may be brought in federal court, if they are "reasonably related" to the claim filed with the agency. *Williams*, 458 F. 3d at 70 (citing *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F. 2d 1397, 1401 (2d Cir. 1993)). A claim is considered reasonably related if the "conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Id.* (quoting *Fitzgerald v. Henderson*, 251 F. 3d 345, 359-60 (2d Cir. 2001)).

5

B.     Application

Here, it is undisputed that Plaintiff has properly exhausted his claim that CBP engaged in discrimination by refusing to provide him with a reasonable religious accommodation. (*See* Def. Mem. at 5.) Plaintiff's disparate treatment claim, although unexhausted, is premised on the allegation that CBP offered such religious accommodations to other CBPOs. (Compl. at ¶ 23.) Such conduct almost certainly would fall within an EEOC investigation into Plaintiff's failure to accommodate claim. *See, e.g.*, *Brown v. Coach Stores, Inc.*, 163 F. 3d 706, 712 (2d Cir. 1998) (explaining that Title VII disparate impact claim was reasonably related to a failure to promote claim because investigation of the latter would involve assessment of the employer's promotion policies and their effect on minorities). Accordingly, Plaintiff's disparate treatment claim is reasonably related to his failure to accommodate claim and therefore properly before this Court. *See Williams*, 458 F. 3d at 70. Thus, these two claims are deemed exhausted.[3]

---

[3] The Court does not construe the Complaint as raising a claim of hostile work environment. Neither the Complaint nor the EEOC Complaint alleges that Plaintiff was subjected to a hostile work environment as a CBPO, nor does Plaintiff reference any such claim in opposing the instant motion. (*See generally* Plaintiff's Memorandum in Opposition ("Pl. Opp."), Doc. Entry No. 53.) Even if the Court were to construe such a claim from statements made by Plaintiff in an October 26, 2010 deposition, detailing a half-dozen "unfriendly" emails he had received from co-workers and some abrasive verbal comments made by a single other CBPO, (Def. 56.1 at ¶¶ 174-75; Pl. 56.1 at ¶¶ 174-75), such a claim would be unexhausted. Furthermore, the claim would fall well short of demonstrating the "severe and pervasive" discriminatory intimidation necessary to prevail on a hostile work environment claim. *See Schwapp v. Town of Avon*, 118 F. 3d 106, 110 (2d Cir. 1997); *see also Miller v. McHugh*, 814 F. Supp. 2d 299, 321-22 (S.D.N.Y. 2011) (quoting *Petrosino v. Bell. Atl.*, 385 F. 3d 210, 223 (2d Cir. 2004)) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."). Accordingly, to the extent the complaint alleges a hostile work environment claim, it is dismissed.

## II.  Motion to Dismiss

### A.  Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557). A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nevertheless, on a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.*, 313 F. 3d 768, 776 (2d Cir. 2002).

In the context of an employment discrimination claim, a complaint "need not contain specific facts establishing a *prima facie* case of discrimination" to survive a motion to dismiss. *Gillman v. Inner City Broad. Corp.*, 2009 WL 3003244, at *3 (S.D.N.Y. Sept. 18, 2009), but must only include "a plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). This remains the proper pleading standard in the Second Circuit, operating in conjunction with the rule articulated in *Twombly* and *Iqbal* that a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

7

### B. Application

Here, Plaintiff alleges employment discrimination under Title VII on the grounds that: (1) CBP refused his request for a reasonable religious accommodation; and (2) CBP subjected him to disparate treatment on the basis of his religion by offering such accommodations to other CBPOs. (Compl. at ¶¶ 23, 28.) The Complaint gives CBP fair notice of the basis for these claims, and contains sufficient factual matter to state a plausible claim for relief, while also implicating factual issues the Court is not entitled to resolve on a motion to dismiss. *See Boykin v. KeyCorp*, 521 F. 3d 202, 214-16 (2d Cir. 2008) (explaining the legal standard for a motion to dismiss with respect to a complaint alleging discrimination); *O'Neal v. State Univ. of N.Y., Health Sci. Ctr. Brooklyn*, 2003 WL 1524664, at *10 (E.D.N.Y. Mar. 24, 2003) (denying motion to dismiss when complaint gave defendant fair notice of plaintiff's Title VII claim and raised factual questions better suited for review on a motion for summary judgment). Accordingly, the Complaint is sufficient to withstand a motion to dismiss and the Court will consider Plaintiff's remaining Title VII claims on Defendant's motion for summary judgment.

### III. Motion for Summary Judgment

### A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* A

genuine issue of material facts exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F. 3d 396, 400 (2d Cir. 1998). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F. 3d 1219, 1224 (2nd Cir. 1994) (citing *Dister v. Cont'l Grp., Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

In the context of an employment discrimination case, to prevail against a motion for summary judgment, the claimant must satisfy the three-part burden-shifting test laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "[A] plaintiff first bears the minimal burden of setting out a *prima facie* discrimination case," *McPherson v. N.Y. City Dep't of Educ.*, 457 F. 3d 211, 215 (2d Cir. 2006) (citations and internal quotation marks omitted), by showing that: (1) he was a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Collins v. N.Y. City Trans. Auth.*, 305 F. 3d 113, 118 (2d Cir. 2002). If the plaintiff successfully establishes a *prima facie* case, the plaintiff "is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action, in which event, the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *McPherson*, 457 F. 3d at 215 (citations and internal quotation marks omitted). Although "[t]he Second Circuit has stated that district courts should be particularly cautious about granting summary judgment to an employer in a discrimination case when the

employer's intent is in question," summary judgment in such a case may still be warranted if the plaintiff relies "on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Figueroa v. N.Y. Health and Hosps. Corp.*, 500 F. Supp. 2d 224, 227-28 (S.D.N.Y. 2007) (internal citations and quotation marks omitted).

### B. Application

#### 1. Failure to Accommodate

Title VII prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's . . . religion," 42 U.S.C. § 2000e-2(a)(1), with "religion" including "all aspects of religious observance and practice, as well as belief." *Id.* § 2000e(j). Thus, "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Cosme v. Henderson*, 287 F. 3d 152, 158 (2nd Cir. 2002). In accordance with the burden-shifting *McDonnell Douglas* framework, plaintiffs alleging a failure to accommodate must first establish a *prima facie* case of discrimination by showing that: "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Knight v. Conn. Dep't of Pub. Health*, 275 F. 3d 156, 167 (2d Cir. 2001) (citation omitted). Within the context of this religious discrimination test, discipline may include any "adverse employment action," such as "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. N.Y. City Bd. of Educ.*, 202 F.

3d 636, 640 (2d Cir. 2000) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F. 2d 132, 136 (7th Cir. 1993)).

Plaintiff claims that CBP engaged in discrimination by refusing to provide him with a reasonable accommodation exempting him from work on the Sabbath. (Compl. at ¶¶ 23, 28.) However, Plaintiff's claim fails because he cannot establish the third element of his *prima facie* case—an adverse employment action—as he has never been terminated, demoted, relieved of material responsibilities, or in any other way disciplined by CBP for failing to comply with an assigned Saturday Morning Shift. (Def. 56.1 at ¶ 139; Pl. 56.1 at ¶ 139; Pl. Dep. Tr. at 104:5-105:18); *see also Thompson v. Kaufman's Bakery, Inc.*, 2005 WL 643433, at *8 (W.D.N.Y. Mar. 16, 2005) (holding that there was no *prima facie* case of discrimination when plaintiff was not disciplined for failing to work on Sabbath); *Reyes v. N.Y. State Office of Children & Family Servs.*, 2003 WL 21709407, at *7 (S.D.N.Y. July 22, 2003) (granting summary judgment for employer as the employer's requirement that the plaintiff provide medical documentation when taking sick leave was not an adverse employment action). In fact, Plaintiff was never in a position to be disciplined for failing to work on Saturday, as the undisputed facts show that he never has had to work that shift when assigned, in large part because CBP allows him to swap shifts with other CBPOs. (Def. 56.1 at ¶¶ 133, 135, 138; Pl. 56.1 at ¶¶ 133, 135, 138.) Far from facing severe discipline, Plaintiff by his own admission, has "progressed through the ranks" as a CBPO and has "received positive evaluations and awards and commendations for his performance." (Compl. ¶ 14.)

Furthermore, the Court cannot infer the adverse employment action element of a *prima facie* discrimination case from the mere possibility that CBP would discipline Plaintiff if he were to outright neglect an assigned Saturday Morning Shift. *See Siddiqi v. N.Y. City Health and*

11

*Hosps. Corp.*, 572 F. Supp. 2d 353, 370 (S.D.N.Y. 2008) (declining to infer discipline element of a *prima facie* discrimination case). Similarly unavailing is Plaintiff's argument that the uncertainty he faces regarding the availability of time off for Sabbath observance is sufficient to show an adverse employment action. (*See* Pl. Opp. at 4-5.) Although such uncertainty may frustrate Plaintiff's Sabbath observance, Title VII only protects an individual from "adverse *employment* consequences as a result of [his] religious beliefs." *Thompson*, 2005 WL 643433, at *8 (emphasis in original). Here, Plaintiff's failure to demonstrate any such consequences is fatal to his discrimination claim. *See Siddiqi*, 572 F. Supp. 2d at 370-71; *Thompson*, 2005 WL 643433, at *8; *Reyes*, 2003 WL 21709407, at *7.

Even assuming Plaintiff could establish his *prima facie* case of discrimination, his Title VII claim still would fail because CBP offered Plaintiff precisely what he had sought in his Religious Accommodation Request: a schedule allowing for a permanent exemption from work on the Sabbath. (Def. 56.1 at ¶¶ 75, 129; Pl. 56.1 at ¶¶ 75, 129.) This Accommodation Tour was a reasonable religious accommodation because, by Plaintiff's own admission, it completely eliminated the conflict between Plaintiff's Sabbath observance and work schedule. (Pl. 56.1 at ¶ 131; Def. 56.1 at ¶ 131); *see also Cosme*, 287 F. 3d at 160 (explaining that an accommodation is reasonable when it eliminates the conflict between an employment requirement and an employee's religious practice).

Furthermore, Plaintiff's assertion that the Accommodation Tour was unreasonable merely because it would require a Weekend Overnight Shift in place of Plaintiff's customary Saturday Morning Shift, is meritless given that the Tour still provided for at least eight hours off between shifts in accordance with CBP's operational policy. (*See* Def. 56.1 at ¶¶ 49, 76; Pl. 56.1 at ¶¶ 49, 76); *see also Baker v. The Home Depot*, 445 F. 3d 541, 548 (2d Cir. 2006) (citing *Ansonia Bd. of*

*Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)) (explaining that an employer need only offer an employee a reasonable accommodation, not the "most beneficial" one); *Elmenayer v. ABF Freight Sys.*, 2001 WL 1152815, at *6 (E.D.N.Y. Sept. 20, 2001) (concluding that a proposed religious accommodation was not unreasonable merely because it would require the employee to work evenings or nights).

Finally, although an accommodation could be unreasonable if it would cause an "inexplicable diminution" in an employee's status or benefits, *Cosme*, 287 F. 3d at 160, Plaintiff cannot demonstrate such a diminution through his conclusory assertions that assignment to the Accommodation Tour would affect "how he is perceived by [CBP]," and would diminish his ability to earn overtime. (Pl. 56.1 at ¶ 71; Pl. Dep. Tr. 173:16-19, 265:1-266:16) (basing his claims, in part, on mere assumptions that he would not be able to perform his job up to the same standards if assigned to the Accommodation Tour, and would be too tired to volunteer for overtime shifts later in the week); *see also Ansonia*, 479 U.S. at 70-71 (noting that even an accommodation that caused a loss of income by requiring employees to take unpaid leave for religious observance could be reasonable, if it had no direct effect on employment opportunities or job status); *Cosme*, 287 F. 3d at 160 (holding that an accommodation was reasonable because it caused no direct reduction of pay rate or loss of seniority). The statutory inquiry, therefore, is at an end, because CBP offered Plaintiff at least one reasonable religious accommodation. *See Ansonia*, 479 U.S. at 68. Accordingly, summary judgment is granted for the Defendant on this claim.

### 2. Disparate Treatment

In accordance with the burden-shifting *McDonnell Douglas* framework, a plaintiff seeking to prevail on a Title VII disparate treatment claim bears the initial burden of establishing

a *prima facie* case of discrimination. To meet this burden, a plaintiff must show that: "(1) she is a member of a protected class; (2) she is competent to perform her job or is performing her duties satisfactorily; (3) she suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination." *Jackson v. N.Y. State Dep't of Labor*, 2012 WL 843631, at *4 (S.D.N.Y. Mar. 12, 2012) (citing *La Grande v. DeCrescente*, 370 Fed App'x 206, 211 (2d Cir. 2010)).

Here, Plaintiff premises his disparate impact claim on the fact that the religious accommodation he was offered, the Accommodation Tour, exempted him from work on the Sabbath but required him to work a Weekend Overnight Shift, while other CBPOs received permanent religious exemptions that required no such shift. (Compl. ¶ 23.) Plaintiff's disparate treatment claim fails, however, as he cannot establish the third or fourth elements of his *prima facie* case.

As discussed above, Plaintiff has failed to establish that CBP subjected him to any adverse employment action. *See supra*, Part III.B.1. This failure also applies with regard to Plaintiff's disparate impact claim because he cannot show that he suffered a "materially adverse change in the terms and conditions of employment." *See Galabya*, 202 F. 3d at 640 (citations and internal quotations marks omitted). In fact, CBP offered Plaintiff the very accommodation he had requested in his initial Religious Accommodation Request: a schedule allowing for a permanent exemption from work on the Sabbath. (Def. 56.1 at ¶¶ 75, 129; Pl. 56.1 at ¶¶ 75, 129.) The mere fact that this Accommodation Tour required Plaintiff to work a replacement Weekend Overnight Shift, while certain other CBPOs received religious exemptions from work that required no such shift, is insufficient to demonstrate that Plaintiff suffered an adverse employment action. *See Feingold v. New York*, 366 F. 3d 138, 152 (2d Cir. 2004) (citations and

internal quotation marks omitted) (stating that an adverse employment action must be more than a "mere inconvenience" or "alteration of job responsibilities"); *Brandon v. O'Mara*, 2011 WL 4478492, at *4-5 (S.D.N.Y. Sept. 28, 2011) (explaining that shift or job responsibility reassignments generally are not sufficient to show an adverse employment action).

Furthermore, Plaintiff's alleged disparate treatment by CBP does not give rise to an inference of religious discrimination. Such an inference may be drawn, for example, when an employer treated the plaintiff less favorably than employees outside the plaintiff's protected group, who are similarly situated to the plaintiff in all material respects. *Graham v. Long Island R.R.*, 230 F. 3d 34, 39-40 (2d Cir. 2000). However, Plaintiff admits that recipients of the allegedly preferential religious exemption included other Orthodox Jewish employees, members of Plaintiff's own protected religious group. (Def. 56.1 at ¶¶ 57-59, 168; Pl. 56. 1 at ¶¶ 57-59, 168.) Moreover, Plaintiff is not similarly situated to the employees he identifies as having this exemption, each of whom previously had worked for one of CBP's predecessor agencies, then transferred into CBP when it was formed by the merger of those agencies in 2003. (*See* Pl. Dep. Tr. at 188:8-194:8.) CBP, in granting permanent religious exemptions for these employees, was merely honoring the exemptions these employees had already negotiated with the predecessor agencies. (Def. 56.1 at ¶ 60.) On the other hand, Plaintiff joined CBP in 2006, several years after its formation, when CBP consistently denied employee requests for permanent religious exemptions from work. (Def. 56. 1 at ¶¶ 1, 61, 63-64; Pl. 56.1 at ¶¶ 1, 61, 63-64.) Thus, Plaintiff fails to show that any similarly situated employee was treated more favorably by CBP. *See Mustafa v. Syracuse City Sch. Dist.*, 2010 WL 4447774, at *11-12 (N.D.N.Y. Nov. 1, 2010) (finding no inference of discrimination because employees were not similarly situated when their employment situations differed due to seniority and tenure). Plaintiff's religious discrimination

claim for disparate treatment under Title VII, therefore, must fail. *See Patane v. Clark*, 508 F. 3d 106, 112 (2d Cir. 2007) (affirming dismissal of discrimination claim for failure to allege factual circumstances from which a discriminatory motivation might be inferred). Accordingly, summary judgment is granted for the Defendant on this claim as well.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied and Defendant's motion for summary judgment is granted in its entirety. Accordingly, the complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
August 22, 2012

/s/
DORA L. IRIZARRY
United States District Judge